Argued and submitted July 31, affirmed November 13, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES FRANKLIN BOATMAN,
aka Michael Rex Allison,
aka Michael Ray McKalep,
*Appellant.*

C 00-03-32067; A111380

57 P3d 918

Peter Gartlan, Chief Deputy Public Defender, argued the cause for appellant. With him on the briefs was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Julie A. Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992(1), arguing that the trial court erred in denying his motion to suppress evidence obtained after defendant consented to the search of his briefcase. We affirm.

The trial court's findings of historical fact are binding on us if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If findings were not made on all pertinent issues, we presume that the trial court decided the facts in a manner consistent with its ultimate conclusion. We must determine whether the trial court applied legal principles correctly to the facts. *Id.*

On March 8, 2000, at about 7:00 p.m., Deputy Schweitzer, a trainee, observed a car fail to stop at a red light. Schweitzer stopped the car, which defendant was driving. Schweitzer requested defendant's driver's license, proof of insurance, and the vehicle's registration. Defendant responded that he had none of those items and that he had just purchased the car. He also stated that he had no identification. Defendant was arrested for failure to present a license, ORS 807.570, handcuffed, and placed in the police car.

Because defendant's car had to be towed, Deputy Yohe, Schweitzer's training officer, began an inventory of the car. As Yohe performed the inventory, Schweitzer attempted to determine defendant's identity for purposes of issuing the traffic citation. Defendant told Schweitzer that his name was Michael Rex Allison and gave his birth date, and Schweitzer used his computer to attempt to verify defendant's identity. Based on the information he received—and within 15 minutes of the commencement of the stop—Schweitzer became "51 percent convinced" that defendant was who he claimed to be.

Schweitzer then began to fill out the vehicle report necessary for towing defendant's car.[1] Because Schweitzer

---

[1] The necessary documents included a copy of the "vehicle violation/custody tow instructions." Under the Multnomah County policy that authorized the

was a trainee, and did not have full authority to make decisions pertaining to custody and release, he was expected to, and intended to, consult with Yohe on what actions to take next concerning defendant's release. At that point, and before Schweitzer had consulted with him, Yohe returned to the police car and asked defendant for consent to search a briefcase that Yohe had found in the trunk during the inventory. Defendant said, "Okay," and gave the officers the combination to the briefcase. There is no evidence that, at the time Yohe asked defendant for his consent, a traffic citation had been issued to defendant or the necessary paperwork associated with the impoundment and tow had been completed.

Yohe subsequently opened the briefcase and saw drug paraphernalia. The ensuing search of the briefcase yielded the drugs that were the subject of defendant's suppression motion.

The trial court denied defendant's motion to suppress the evidence found in the briefcase. It concluded, in pertinent part, that defendant was reasonably detained pursuant to ORS 807.570(4) for confirmation of his identity; that the inventory of the car, including the briefcase, was authorized by relevant provisions of the Multnomah County Code; and that, in any event, defendant gave knowing and voluntary consent for the search of the briefcase. Defendant subsequently was convicted, based on stipulated facts, of possession of a controlled substance.

On appeal, defendant makes several related arguments as to why the trial court erred in denying his motion to suppress. First, defendant argues, under ORS 807.570(4), that he was unlawfully detained after Schweitzer became "51 percent" certain that defendant was who he said he was. ORS 807.570 provides, in part:

"(1) A person commits the offense of failure to carry a license or to present a license to a police officer if the person * * *:

"* * * * *

---

impoundment, inventory, and towing of defendant's vehicle, the "driver *must* be issued a copy" of those instructions. (Emphasis added.)

"(b) Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances:

"(A) Upon being lawfully stopped or detained when driving a vehicle.

"* * * * *

"(4) A police officer may detain a person arrested or cited for the offense described in this section *only for such time as reasonably necessary to investigate and **verify** the person's identity*."

(Emphasis and boldface added.) In that connection, defendant invokes *State v. May*, 162 Or App 317, 986 P2d 608 (1999), *rev den*, 330 Or 375 (2000), *State v. Bishop*, 157 Or App 33, 967 P2d 1241 (1998), and *State v. Auer*, 90 Or App 459, 752 P2d 1250 (1988), for the proposition that his identity was "verified" under ORS 807.570(4) at the point that Schweitzer attained the "51 percent" confidence level. Defendant asserts that, because the request for consent occurred after the lawful basis for the stop had dissipated, that request unlawfully—and, indeed, unconstitutionally—prolonged the stop.

Second, defendant asserts that, even if his identity had not been sufficiently "verified" by the time Yohe requested his consent to search the briefcase, *May, Bishop*, and *Auer* stand for the proposition that such a request for consent while a person's identity is being investigated pursuant to ORS 807.570(4) has the effect of prolonging the detention and, thus, results in a violation of that statute. Defendant contends that his consent to search was the product of exploitation of the unlawful extension of his detention.

The state responds that *May, Bishop*, and *Auer* are distinguishable—and, in all events, not dispositive. In particular, the state asserts that, even if the request for consent so prolonged defendant's detention as to violate ORS 807.570(4), that statutory violation does not rise to the level of a constitutional violation and, thus, does not provide grounds for suppression.

■    As described below, we accept for purposes of our analysis that, in this case, Schweitzer had "verified" defendant's identity for purposes of ORS 807.570(4) at the point he became "51 percent" certain of that identity.[2] However, we conclude that, in the totality of the circumstances of this case, defendant failed to demonstrate that Yohe's subsequent request for consent extended the stop so as to give rise to a constitutional violation.

To prevail, defendant must establish not merely that the request for consent following verification of identity violated ORS 807.570(4), but, further, that that request unconstitutionally prolonged the stop. ORS 136.432 provides, in part:

> "A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:
>
> "(1)   The United States Constitution or the Oregon Constitution[.]"[3]

In asserting that the request for consent here offended Article I, section 9, of the Oregon Constitution, defendant invokes *State v. Amaya*, 176 Or App 35, 29 P3d 1117 (2001), *rev allowed*, 334 Or 288 (2002), which explored the question of whether evidence needed to be suppressed when an officer asked for consent unrelated to a traffic stop where that stop was validly ongoing. In answering that question, we distinguished *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998), where the request for consent had the effect of extending the detention from an otherwise completed traffic stop:

> "*Toevs* thus stands for the proposition that questioning that has the effect of detaining a defendant *beyond* a completed traffic stop must be supported by reasonable suspicion that the defendant is engaged in criminal activity. The

_____

[2] We leave for another day the provocative question of whether, *in general*, *May, Bishop,* and *Auer* individually or collectively compel the conclusion that "51 percent" confidence in a suspect's identity constitutes "verification" within the meaning of ORS 807.570(4).

[3] ORS 136.432 was not at issue in *May, Bishop,* or *Auer* on which defendant relies.

court did not address whether questioning *during the course* of an otherwise lawful traffic stop likewise must be supported by reasonable suspicion.

> "The rationale of *Toevs*, however, makes clear that questioning *during* an otherwise valid traffic stop that does not have such a detaining effect does not require reasonable suspicion. That is because, under *Toevs*, it is detention that triggers Article I, section 9, not the mere fact that the officer is asking questions. Said another way, only when the questioning rises to the level of a seizure is the constitution implicated. Not all questioning will rise to that level, particularly when it takes place during a lawful stop and does not have the effect of extending its duration."

*Amaya*, 176 Or App at 43-44 (emphasis in original).[4]

Thus, to prevail under *Amaya*, defendant must establish that the request for consent here resulted in an extension of detention after the traffic *stop* was complete. Defendant failed to make that showing. Indeed—and conversely—the record shows that the stop was validly ongoing at the time consent was requested.

We return to the pertinent facts: (1) Schweitzer became "51 percent" certain of defendant's identity. (2) Because of Schweitzer's trainee status, he did not have complete discretion to release defendant or any suspect but was expected to consult with his training officer, Yohe, first. (3) At the same time that Schweitzer was determining defendant's identity, Yohe was engaged in performing a lawful inventory. (4) Subsequently to, but closely contemporaneously with, Schweitzer becoming "51 percent" certain of defendant's identity—and as Schweitzer was completing necessary paperwork for the towing of defendant's car—Yohe, as part of the ongoing inventory, requested consent to search the briefcase. (5) There is no evidence that, at the time Yohe requested consent, Schweitzer had completed and issued the traffic citation or documentation associated with the tow and impoundment. Rather, all reasonable record inferences are to the contrary. (6) The total time of the encounter, between

---

[4] The traffic stop at issue in *Toevs* occurred in 1993. ORS 136.432, which had not yet been enacted at that time, was not at issue in that case.

the initial stop and the request for consent, was about 15 minutes.

Given the totality of the those circumstances, defendant failed to demonstrate that the traffic stop was not lawfully ongoing at the time consent was requested. Whatever the meaning of "verification" for purposes of ORS 807.570, a "stop" for constitutional purposes necessarily encompasses the time reasonably required to complete a citation and any other documents that must be given to the citizen in connection with the detention. Here, that time included reasonable time for Schweitzer or Yohe, after appropriate consultation, to issue the citation, as well, as perhaps, documentation that must be given to the citizen in connection with the impoundment and tow.[5] Defendant did not show that the request for consent occurred beyond the time when those tasks should reasonably have been completed. Thus, defendant has not demonstrated that the request for consent "detain[ed] defendant beyond a completed traffic stop." *Amaya*, 176 Or App at 43. There was no violation of the Oregon Constitution.

Defendant also makes a cursory argument that, under the Fourth Amendment to the United States Constitution, evidence obtained in a consent search after a traffic stop should have ended "is fruit of the poisonous tree and must be suppressed, even when the consent is voluntary." Even assuming that defendant's broad assertion were a correct statement of Fourth Amendment jurisprudence, *but see Ohio v. Robinette*, 519 US 33, 117 S Ct 417, 136 L Ed 2d 347 (1996), defendant's argument fails because, as discussed above, he has not established that his consent was obtained after the traffic stop should have ended.

In summary, defendant has established no violation of either the state or the federal constitution. Even assuming that he has established a violation of ORS 807.570(4), he is not entitled to suppression of evidence, given the strictures of ORS 136.432.

Affirmed.

---

[5] *See* 185 Or App at 29 n 1, noting that inventory policy requires that driver be issued a copy of the "vehicle violation/custody tow instruction."