Argued and submitted December 23, 2002, affirmed June 5, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# JAMES EDWARD WOOD,
*Respondent.*

## 01021796; A116621

69 P3d 1263

David J. Amesbury, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Peter Gartlan, Chief Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

This case presents a familiar pattern: A police officer lawfully stops a driver to investigate a traffic infraction and then, after citing the driver and returning documents, without any reasonable suspicion that the driver has committed a crime, asks permission to search the driver's vehicle. The driver gives consent, and the search leads to contraband. The driver, now a defendant, moves to suppress the contraband as deriving from an unlawful search, and the state argues that defendant's consent negates any illegality. *See, e.g., State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998); *State v. Arabzadeh*, 162 Or App 423, 986 P2d 736 (1999). Those cases are highly fact-specific. Here, the trial court granted defendant's motion to suppress. The state appeals, and we affirm.

The trial court made the following findings, which we are bound to accept because they are supported by the evidence. *State v. Stroup*, 147 Or App 118, 120, 935 P2d 438 (1997). During the midmorning hours of September 9, 2000, Oregon State Police Officer Knapp noticed that defendant was driving without wearing a seatbelt and that his license plate tags had expired, both traffic infractions. ORS 811.210; ORS 803.560. Knapp pulled defendant over and parked behind his car. Leaving the lights flashing on his patrol truck, Knapp walked to defendant's car and asked for his license, registration, and proof of insurance. Defendant gave Knapp a valid driver's license but was unable to produce the other documents. As Knapp was talking with defendant, a second officer, Trooper Heuberger, arrived to back up Knapp. Heuberger parked his patrol car across the street from defendant's. Knapp told Heuberger that he wanted to search defendant "for illegal narcotics, drugs, [and] weapons"; apparently, at an earlier encounter between Knapp and defendant, Knapp had noticed "tracks" on defendant's arms and suspected that he was an intravenous drug user. Heuberger went to stand behind defendant's car while Knapp wrote out a citation for expired tags and warnings for the seatbelt violation and for failure to produce proof of insurance.

Knapp then returned to defendant's car and handed him the citations and his license. He told defendant that he

was free to go. However, knowing that defendant intended to open the car door in order to go to a grocery store across the street, Knapp positioned himself about a foot from the door in such a way as to prevent defendant from opening it and, as defendant was putting his wallet back in his pocket, asked defendant for consent to search the car. At the time, neither Knapp nor Heuberger had any concerns for their own safety or any suspicion that defendant had committed a crime. Heuberger was still standing behind defendant's car and the flashing lights on Knapp's patrol vehicle were still on. Defendant felt that he could not leave. He consented to the search.

Knapp asked defendant to get out of the car, and defendant went to stand next to Heuberger. Knapp searched the car and found two pipes with marijuana residue, a small knife with residue, and a bong with residue. He also found a folded piece of aluminum foil in a jacket that belonged to defendant. The foil contained methamphetamine residue. Defendant told the officer that the marijuana paraphernalia belonged to a friend but admitted that the piece of foil was his. Knapp told defendant that he would have the residue tested and recontact him. He then told defendant (again) that he was free to go. After tests indicated the residue was methamphetamine, defendant was charged with possession of a controlled substance. ORS 475.992(4)(b).

The state has the burden of establishing the legality of this warrantless search by a preponderance of the evidence. ORS 133.693(4). In a memorandum and in oral argument before the trial court, the state maintained that no unlawful detention occurred; the stop was lawful, it terminated when the officer returned documents to defendant and told him he was free to go, and subsequent conversations between the officer and defendant (including the request for consent to search) were just that: mere conversation. Further, the state argued, even if the stop did not end but continued through the request for consent and subsequent search, the officer had express authority to make that request under ORS 810.410(3)(e), which provides that, during a traffic stop, an officer "[m]ay request consent to * * * search" for contraband. Defendant responded that the proper inquiry was a "two-part analysis": first, whether the search violated Article

I, section 9, of the Oregon Constitution or the Fourth Amendment to the United States Constitution; and, second, if so, whether the evidence resulting from that unlawful search had to be suppressed. According to defendant, the search was unconstitutional because the officer had no reasonable suspicion that he had committed a crime, and the evidence had to be suppressed because his consent was not voluntary. The trial court held that the entire encounter between defendant and the police was one stop; that after Knapp cited defendant and returned his license, the reason for the stop ceased to exist so that further detention was unlawful; and that, under the circumstances, defendant's subjective belief that he was being detained was reasonable. The court concluded that defendant's consent occurred during the unlawful detention and was therefore invalid. Although the court concluded that defendant did not voluntarily remain in his car, it did not decide whether he voluntarily consented to the search.

On appeal, the state renews its argument that neither ORS 810.410 nor the state or federal constitution prohibits an officer from requesting consent to search during a traffic stop even if the officer does not have any suspicion of criminal activity. Further, the state contends that, the request did not occur after the stop but during it; that if it occurred afterwards, it was not part of a constitutionally significant seizure but "mere conversation"; and that, even if the request occurred after the lawful stop ended and during a subsequent unlawful detention, that fact by itself does not require the court to suppress the evidence because defendant's consent was the result of neither police exploitation of an illegality nor of coercion. Defendant, relying primarily on the Fourth Amendment, contends that his continued detention after the purpose for the traffic stop ended amounted to an unlawful seizure and that therefore, because the state did not establish that the connection between the unlawful detention and the request for consent was "attenuated," the consent was involuntary and the evidence was therefore inadmissible.

We find many of those arguments easily resolved. It is now clear, for example, that ORS 810.410(3)(e) authorizes police to request consent to search during a lawful traffic stop

even with no individualized suspicion and that neither Article I, section 9, nor the Fourth Amendment prohibits such a request. *State v. Amaya*, 176 Or App 35, 44, 47, 29 P3d 1177 (2001), *rev allowed*, 334 Or 288 (2002); *State v. Duffy*, 176 Or App 49, 52-53, 29 P3d 1222 (2001). Further, some of the arguments are irrelevant. It does not matter, for example, whether the historical facts demonstrate a single stop or two separate stops. In either case, the question is the same: whether, at the time of the request for consent to search and in the absence of reasonable suspicion, defendant was being unlawfully detained. If, as the trial court held, the entire event encompassed but a single stop, then the question is whether the request occurred during an unlawful extension of the originally lawful stop. *Toevs*, 327 Or at 534-35. If two stops occurred, then the question is whether the request occurred during an independently unlawful stop or during "mere conversation," which does not implicate constitutional protections. *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991). Both questions turn on whether defendant had an objectively reasonable belief that a law enforcement officer had significantly restricted his freedom of movement. *Id.* at 409-10; *Toevs*, 327 Or at 535.

In the present case, the trial court found as fact that defendant believed that he was not free to leave, despite Knapp's assurance that he was. The court also found that defendant's belief was objectively reasonable. The former finding is factual. We accept it because there is evidence to support it: defendant's uncontradicted testimony. The latter conclusion is legal. *Toevs*, 327 Or at 535; *State v. Puffenbarger*, 166 Or App 426, 434, 998 P2d 788 (2000). We agree with the trial court on that issue as well. Defendant found himself in the presence of two uniformed police officers. Two police vehicles were nearby, one of which had its flashing lights on. One officer stood behind defendant's car. The other, to whom defendant had related his plan to leave the car, stood so as to make that exit impossible and then asked defendant a question. A reasonable person in defendant's position would have felt that the officers had significantly restricted his freedom of movement. *See Toevs*, 327 Or at 537 (despite officer's assurance to defendant that he was free to go, defendant's belief that he was not was reasonable

under the totality of the circumstances; "an officer's *conduct* after stating that a driver is free to go may *negate* such a statement" (emphasis in original)). Thus, the officer's request for consent to search occurred during an unlawful detention.

██ That conclusion is relevant to the question whether the evidence must be suppressed, but it is not dispositive. That is so because a person can give a valid consent even after having been unlawfully seized. *Arabzadeh*, 162 Or App at 426-28. As the Supreme Court observed in *State v. Rodriguez*, 317 Or 27, 38-40, 854 P2d 399 (1993), evidence discovered in a consent search after an unlawful police detention need not be suppressed unless the consent was involuntary or it resulted from police exploitation of the unlawful detention. In the present case, defendant never argued to the trial court that police exploited the unlawful detention in order to extract consent. Rather, his argument relied entirely on voluntariness. When the issue is voluntariness, then the prior unlawful activity

> "*may* have some effect on the state of mind of the person giving the consent, affecting whether the consent is a voluntary act of that person's free will. Where the unlawful conduct bears on the voluntariness of the consent, *as in any other case where voluntariness is at issue*, the state must prove by a preponderance of the evidence that the consent was voluntary."

*Rodriguez*, 317 Or at 38 (emphasis added; footnote and citation omitted). Thus, the dispositive issue in this case is whether defendant's consent was voluntary.

As noted above, the state has the burden of proving voluntariness by a preponderance of the evidence. However, the state never argued to the trial court that defendant's consent was voluntary. The prosecution began by arguing that the stop was not unlawful under any statute or constitutional provision. Defendant responded that it was unlawful and that the consent that ensued was not voluntary, arguing that

> "mere acquiescence, mere consent in the presence of lawful authority is not enough to give valid consent. If the defendant doesn't feel he's free to go, then * * * he doesn't have the ability to say no, then his consent is not voluntarily given[.]"

The state never replied to that voluntariness argument. Because it never contested that issue, it did not "identify [it] adequately for the judge." *State v. Wyatt*, 331 Or 335, 341-43, 15 P3d 22 (2000). That being the case, the issue cannot be raised for the first time on appeal. *Id*.

Affirmed.