168 P.3d 803 (2007)
215 Or. App. 339
STATE of Oregon, Plaintiff-Respondent,
v.
Brent Adam RANEY, Defendant-Appellant.
040733733; A128025.
Court of Appeals of Oregon.
Submitted on Record and Briefs June 25, 2007.
Decided October 3, 2007.
*804 Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, and Meridith Allen, Deputy Public Defender, Office of Public Defense Services, Legal Services Division, filed the brief for appellant.
Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.
Before EDMONDS, Presiding Judge, and WOLLHEIM[*] and SERCOMBE, Judges.
WOLLHEIM, J.
Defendant appeals a judgment of conviction for possession of methamphetamine, former ORS 475.992 (2003), renumbered as ORS 475.840 (2005). He assigns error to the trial court's denial of his motion to suppress evidence obtained during a search of his car, and to the court's admission of a laboratory report at trial that confirmed that the substance seized from his car was methamphetamine. We reject his claim that the trial court erred in denying his motion to suppress, but choose to exercise our discretion to address his unpreserved claim that the trial court erred in admitting the laboratory reportwithout requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailablein violation of his rights under Article I, section 11, of the Oregon Constitution.[1] Accordingly, we reverse and remand for a new trial.
This case involves a routine traffic stop during which the officer requested, and obtained, defendant's consent to search his car. The search uncovered methamphetamine, which was confirmed by a subsequent laboratory report. The laboratory report was admitted at trial without objection from defendant.
We take the facts from the trial court's thoughtfully articulated findings. Officer Devlin of the Portland Police Bureau stopped defendant after observing him exceed the speed limit and fail to signal 100 feet prior to making a turn. Devlin obtained defendant's driver's license and insurance card. He entered defendant's information into a computer in his patrol car to check the status of *805 defendant's license. While Devlin was waiting for the computer to retrieve defendant's information, which, according to Devlin, can "take[] a couple minutes," he walked back to defendant's car. At that point, Devlin had not decided whether he was going to cite defendant for the traffic violations or merely issue a warning, and it is not clear whether Devlin returned defendant's driver's license and insurance card at that time. Devlin asked defendant whether he had any illegal drugs, and defendant responded in the negative. He estimated that it took a "couple of seconds" to ask that question and to receive defendant's answer. Devlin then requested, and obtained, consent to search defendant's car. During the search, he found a bag under defendant's seat that contained several syringes and a baggie containing what Devlin believed to be methamphetamine.
Before trial, defendant moved to suppress the evidence obtained from his car on the ground that Devlin unlawfully extended the duration of the traffic stop in violation of his rights under Article I, section 9, of the Oregon Constitution.[2] The court denied defendant's motion. In a subsequent trial on stipulated facts, the court admitted into evidence a laboratory report that confirmed that the baggie seized from defendant's car contained methamphetamine. Defendant did not object to the admission of the laboratory report, and the trial court convicted defendant of possession of methamphetamine.
We begin with defendant's first claim, that the trial court erred in denying his motion to suppress. On appeal, defendant renews his argument that Devlin unlawfully extended the duration of the traffic stop by recontacting defendant without reasonable suspicion that defendant had engaged in criminal activity and that Devlin exploited the unlawful stop to obtain defendant's consent to search his car. The state contends that the traffic stop was not unlawfully extended, "because the officer obtained [defendant's] consent [to search] while he was waiting for information to come back on defendant's license status." We review the trial court's denial of defendant's motion to suppress for errors of law, deferring to the trial court's findings of historical fact when there is evidence in the record to support them. State v. Woodall, 181 Or.App. 213, 217, 45 P.3d 484 (2002). We conclude that the trial court did not err in denying the motion to suppress.
We briefly pause our analysis to frame the precise issue before us. It is well established that, under Article I, section 9, questioning during a traffic stop that has the effect of detaining a person beyond the completed traffic stop must be supported by reasonable suspicion that the person is engaged in criminal activity. State v. Toevs, 327 Or. 525, 534-35, 964 P.2d 1007 (1998); see also State v. Ehret, 184 Or.App. 1, 7, 55 P.3d 512 (2002) ("Under Article I, section 9, the police cannot continue to lawfully detain a defendant after a legal stop has ended without reasonable suspicion that he or she has engaged in some criminal activity."). Here, we are not presented with a question of whether Devlin had reasonable suspicion to detain defendant beyond a completed traffic stop, because the traffic stop had not ended when Devlin recontacted defendant. At the time he recontacted defendant, Devlin was waiting for the computer to verify the status of defendant's driver's license, and he had not decided whether to cite defendant for the traffic violations; thus, the officer was still in the process of investigating the traffic violations. Because the stop was ongoing, the question before us is whether Devlin unlawfully extended the originally lawful stop by recontacting defendant to ask him whether he had any illegal drugs and to request consent to search his car.
An officer can lawfully detain a driver in association with a traffic stop for "the time reasonably required to complete a citation and any other documents that must be given to the citizen in connection with the detention." State v. Boatman, 185 Or.App. 27, 34, 57 P.3d 918 (2002). However, the extension of a traffic stop beyond the reasonable time *806 to complete the traffic citation that has the effect of detaining the driver must be supported by reasonable suspicion. Ehret, 184 Or.App. at 8-9, 55 P.3d 512.
Determining whether a traffic stop was unlawfully extended is a highly fact-specific inquiry; accordingly, for comparison purposes, we briefly discuss the facts of two cases that addressed the same issue. In Ehret, this court held that the law enforcement officers unlawfully extended a traffic stop by "compelling [the] defendant to get out of the car in the absence of a reasonable suspicion of criminal activity." 184 Or.App. at 9, 55 P.3d 512. There, the officer stopped the defendant's car for speeding and obtained the defendant's driver's license and proof of insurance. Id. at 3, 55 P.3d 512. While in his patrol car, the officer verified the status of the defendant's license and wrote a traffic citation. During that time, a police dispatcher informed the officer that the defendant had past involvement in drug-related offenses. The officer then walked back to the defendant's car, but did not give him the citation. Instead, the officer asked the defendant to get out of the car and questioned him about his criminal history and whether he had drugs inside his car. Id. at 3-4, 55 P.3d 512. Two other officers subsequently arrived on the scene and joined in the questioning. Twenty-one minutes after the initial traffic stop, the officers searched the defendant's vehicle and seized a substantial amount of controlled substances and $60,000 in cash. Id. at 4-5, 55 P.3d 512. The trial court denied the defendant's motion to suppress the evidence obtained from the search. On appeal, this court reversed; we concluded that the trial court erred in denying the motion to suppress, because during the valid traffic stop the officer had "no authority, statutory or constitutional, to extend the duration of the stop by compelling [the] defendant to get out of the car in the absence of a reasonable suspicion of criminal activity." Id. at 8-9, 55 P.3d 512.
We reached a different conclusion in Boatman. There, we held that the officer's request for consent to search during a traffic stop did not "extend[] the stop so as to give rise to a constitutional violation." 185 Or. App. at 32, 57 P.3d 918. In Boatman, an officer stopped the defendant's car after observing him run a red light. Id. at 29, 57 P.3d 918. The officer requested the defendant's driver's license, proof of insurance, and registration. When the defendant stated that he did not have a driver's license, the officer arrested him for failure to present a license; the defendant was handcuffed and placed in the patrol car. While that officer attempted to determine the defendant's identity, another officer performed an inventory of the defendant's car to facilitate its being towed. During the inventory, the officer found a briefcase in the defendant's trunk; he returned to the patrol car and requested, and obtained, the defendant's consent to open and search the briefcase. Id. at 30, 57 P.3d 918. The briefcase contained the controlled substances that were the subject of the defendant's motion to suppress. On appeal, the defendant argued that, because the request for consent occurred after the officers were approximately 51 percent certain of his identity, the request for consent unconstitutionally prolonged the stop. Id. at 31, 57 P.3d 918. Accepting for purposes of analysis that the officer had "verified" the defendant's identity at the point he became 51 percent certain of that identity, we held that the request for consent to search did not unconstitutionally prolong the stop, because the request did not occur beyond a reasonable time required to complete the traffic stop. Id. at 34, 57 P.3d 918. In that case, the reasonable time required to complete the traffic stop included time for the officers to consult, to issue a citation, and to complete the documentation necessary to impound and tow the defendant's car.
Applying those principles to this case, we conclude that, based on the totality of the circumstances, the trial court properly concluded that Devlin's question to defendant about illegal drugs and his subsequent request for consent to search did not unlawfully extend the traffic stop. Devlin did not detain defendant beyond the time reasonably required to complete the traffic stop. The record supports the trial court's findings that, at the time he recontacted defendant, Devlin was still investigating the traffic stop, had not ascertained the status of defendant's *807 driver's license, and was unable to complete the traffic stop until that information came back. There is no indication that Devlin "deliberately delayed" issuing defendant a traffic citation as defendant suggests, or that Devlin's request for consent to search occurred beyond the reasonable time required to complete the traffic stop.
Devlin was permitted to request consent to search defendant's car during the lawful traffic stop without individualized suspicion that defendant was involved in criminal activity. See ORS 810.410(3)(e) (allowing officers to request consent to search for, among other things, "items of evidence otherwise subject to search or seizure" during a traffic stop); see also State v. Wood, 188 Or.App. 89, 93-94, 69 P.3d 1263 (2003); State v. Duffy, 176 Or.App. 49, 53, 29 P.3d 1222 (2001), rev. den., 337 Or. 669, 104 P.3d 601 (2004). The stop was not unlawfully extended.[3] Accordingly, the trial court did not err in denying defendant's motion to suppress.
We turn to defendant's second assignment of error, in which he asks this court to address an unpreserved claim that the trial court's admission of a laboratory report, which confirmed that the substance he possessed was methamphetamine, without requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailable, violated his constitutional right to confrontation. Defendant concedes that he failed to object to the admission of the laboratory report at trial. On appeal, he argues that the admission of the laboratory report constitutes plain error and urges this court to exercise its discretion to correct it. We agree with defendant that the admission of the laboratory report constitutes plain error under Article I, section 11, of the Oregon Constitution, and we choose to exercise our discretion to correct it.
This court has discretion to review unpreserved errors of law that are "apparent on the face of the record," otherwise referred to as "plain error." ORAP 5.45(1). To constitute plain error, the error must (1) be an error of law, (2) be apparent, meaning that the legal point is obvious, not reasonably in dispute, and (3) appear on the face of the record such that we "need not go outside the record or choose between competing inferences to find it." State v. Brown, 310 Or. 347, 355, 800 P.2d 259 (1990). Whether an error constitutes plain error is determined by the law as it exists at the time the appeal is decided and not as of the time the trial court rendered the challenged ruling. State v. Jury, 185 Or.App. 132, 139, 57 P.3d 970 (2002), rev. den., 335 Or. 504, 72 P.3d 636 (2003).
The trial court's admission of the laboratory report in this case satisfies all three plain error requirements. In State v. Marroquin, 215 Or.App. 330, ___, ___ P.3d ___, 2007 WL 2851275 (Oct. 3, 2007) (slip op at 7), we held that, in light of State v. Birchfield, 342 Or. 624, 157 P.3d 216 (2007), the admission of a laboratory report that confirms the presence of controlled substances, without requiring the state to produce at trial the criminalist who prepared the report or to demonstrate that the criminalist was unavailable, constitutes plain error under Article I, section 11, of the Oregon Constitution. That conclusion applies equally here.
However, that does not end our inquiry; we must now decide whether to exercise our discretion to consider, or not to consider, *808 the plain error. Ailes v. Portland Meadows, Inc., 312 Or. 376, 382, 823 P.2d 956 (1991). In Marroquin, we decided to exercise our discretion to correct the error in admitting a laboratory report after considering the gravity of the error and the general policies behind the preservation requirement. 215 Or. App. at 330, ___ P.3d ___, 2007 WL 2851275 (slip op at 7-8). For the reasons that we expressed in Marroquin, we choose to exercise our discretion to correct the trial court's error in admitting the laboratory report in this case.
Reversed and remanded.
NOTES
[*] Wollheim, J., vice Brewer, C.J.
[1] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face[.]"
[2] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"
[3] The fact that Devlin asked defendant whether he had any illegal drugs before he requested consent to search does not alter our conclusion that the traffic stop was not unlawfully extended. ORS 810.410(3) authorizes a police officer to inquire into circumstances during a traffic stop that "(1) are reasonably related to the traffic violation, ORS 810.410(3)(b); (2) develop during the stop and give rise to a reasonable suspicion of criminal activity, ORS 810.410(3)(c); or (3) help ensure the safety of the officer, including an inquiry about weapons, ORS 810.410(3)(d)." State v. Thompkin, 341 Or. 368, 375-76, 143 P.3d 530 (2006). Assuming, for the purpose of analysis, that Devlin's question regarding illegal drugs violated ORS 810.410(3), that statutory violation, alone, is not a sufficient basis to exclude the challenged evidence. See ORS 136.432 (so stating). To warrant exclusion, Devlin's question would have had to unconstitutionally prolong the traffic stop under Article I, section 9. The trial court concluded that "the time it [took] to ask * * * and have [defendant] answer" that one question "didn't prolong [the stop] at all." We agree with the trial court.