Argued and submitted November 29, 2007, reversed and remanded April 16, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MICHAEL K. RODGERS,
*Defendant-Appellant.*

Benton County Circuit Court
CM0420629; A128857

182 P3d 209

Ryan T. O'Conner argued the cause for appellant. On the brief were Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Jamesa J. Drake, Deputy Public Defender, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Wollheim, Judge, and Schuman, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals his conviction for manufacture of a controlled substance, assigning error to the trial court's denial of his motion to suppress evidence obtained after he consented to a search of his vehicle. In particular, he argues that, although the evidence was discovered after he consented to the search, his consent was unlawfully obtained because it occurred during the unlawful extension of what began as a lawful stop. We reverse and remand.

The following facts either are not in dispute or, if disputed, are consistent with the trial court's written findings. Corvallis Police Officer Van Arsdall noticed that defendant was driving a car with a burned-out license plate light, a traffic infraction under ORS 816.330. Van Arsdall pulled defendant over, walked to the car, and asked defendant for his license, registration, and proof of insurance. Defendant gave Van Arsdall a valid driver's license and vehicle registration, but he was unable to produce proof of insurance; he told Van Arsdall that the car was borrowed and that he was driving it with the owner's permission. During this conversation, Van Arsdall noticed a large container filled with blue liquid on the front passenger floorboard as well as a white sack containing a smaller, square container behind defendant in the back seat. He also noticed that the back seat of the car was filled with clothing and that defendant had "sores and such" on his face that the officer believed to be consistent with methamphetamine use.

Van Arsdall returned to his patrol car and radioed a request for a records check to determine if there were outstanding warrants for defendant's arrest. While he was waiting for the results, a second officer, Kantola, arrived to assist. Van Arsdall told Kantola of his belief that, based on what he had observed, defendant was involved in the manufacture of methamphetamine.

Defendant's records check came back clear. At that point, according to Van Arsdall's testimony, he had everything he needed to issue a citation. Instead, he and Kantola walked back to defendant's car. With Kantola on the passenger side, Van Arsdall stood at the driver's side and initiated a

conversation with defendant. He told defendant that he was concerned about the blue liquid. Defendant explained—accurately, as it happened—that the liquid was windshield washer fluid. Van Arsdall then told defendant that he was also concerned about the container in the white sack. Defendant voluntarily removed the container from the sack and showed it to Van Arsdall, explaining that it contained denatured alcohol, which, he told Van Arsdall, he used for his job at a company that made fertilizer. Van Arsdall testified that this exchange lasted "[a] couple of minutes," after which he asked defendant for consent to search the car. Defendant consented, stepped out of the vehicle, and went to stand with Kantola at the patrol car. Van Arsdall searched the car and discovered additional items—acid, lithium batteries, foil, and cold medicine containing pseudoephedrine—that led to defendant's conviction.

Defendant was charged with unlawful manufacture of a controlled substance. *Former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). Before trial, he moved to suppress the evidence found in his car on the ground that Van Arsdall unlawfully extended the scope and duration of the traffic stop by questioning him without reasonable suspicion in violation of Article I, section 9, of the Oregon Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. The trial court denied the motion.

On appeal, defendant concedes that his encounter with the police began as a lawful stop based on a traffic infraction, but argues that the stop was unlawfully extended when Van Arsdall had everything he needed to issue a citation for the burned-out license plate light and, instead of doing so, questioned defendant about the containers without reasonable suspicion that defendant had engaged in criminal activity. It follows from the facts above, according to defendant, that his consent to the search was a product of an unlawful seizure of his person and that all evidence discovered as a result must be suppressed. The state responds that,

"[b]ecause Van Arsdall had lawfully stopped defendant and had the authority to *continue* to detain defendant for at least several more minutes [in order to write and issue a

traffic citation] as part of the traffic stop, [he] did not unlawfully extend the *duration* of the traffic stop by posing the challenged questions to defendant."

(Emphases in original.) Additionally, although the state concedes that Van Arsdall initially lacked reasonable suspicion to ask for consent, it further argues that "once defendant made statements connecting himself to two known ingredients used to manufacture methamphetamine, Van Arsdall * * * develop[ed] reasonable suspicion to detain and question defendant regarding the substances."

■ We review the trial court's denial of defendant's motion to suppress for errors of law, deferring to the trial court's findings of historical fact when there is evidence in the record to support them. *State v. Brown*, 209 Or App 699, 701, 149 P3d 294 (2006). Because we resolve this case on state law grounds, we do not reach defendant's federal constitutional claim. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court considers all questions of state law before reaching federal constitutional claims). We conclude that the trial court erred in denying defendant's motion and therefore reverse and remand.

■ Article I, section 9, of the Oregon Constitution precludes unreasonable seizures.[1] A traffic stop is a temporary seizure that occurs when an officer restrains an individual's liberty or freedom of movement. *State v. Amaya*, 176 Or App 35, 43, 29 P3d 1177 (2001), *aff'd on other grounds*, 336 Or 616, 89 P3d 1163 (2004). To be reasonable, traffic stops must be supported by reasonable suspicion that the person stopped has committed a traffic infraction. *Id.* If reasonable suspicion of a traffic infraction exists, "[a]n officer can lawfully detain a driver * * * for 'the time reasonably required to complete a citation and any other documents that must be given to the citizen in connection with the detention.'" *State v. Raney*, 215 Or App 339, 343, 168 P3d 803 (2007), *modified on recons*, 217 Or App 470, 175 P3d 1024 (2008) (quoting *State v. Boatman*, 185 Or App 27, 34, 57 P3d 918 (2002)). *During* a lawful traffic stop, an officer may, without violating Article I, section 9,

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

question the motorist about matters that are unrelated to the stop. *Amaya*, 176 Or App at 44. Questioning that occurs during, or causes, an *extension* of the traffic stop beyond that reasonable time, however, is the functional equivalent of a new restraint of the motorist's liberty, and must be supported by reasonable suspicion that the motorist has engaged in some further criminal activity. *Raney*, 215 Or App at 343; *see also State v. Mastin*, 203 Or App 366, 371, 124 P3d 1275 (2005), *adh'd to on recons*, 205 Or App 528, 134 P3d 1052 (2006) ("Without reasonable suspicion of a crime, an officer's authority is strictly limited to a reasonable investigation of the traffic infraction."). Evidence that derives from that questioning is subject to suppression unless the state can prove that the disputed evidence inevitably would have been discovered, was independently discovered through lawful means, or was sufficiently attenuated from the unlawful police conduct. *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005).

 Inquiries unrelated to the initial traffic infraction can lead to unlawful restraint of a person's liberty in two situations. The first occurs when the officer concludes a lawful stop and then reinitiates a second stop by beginning to question the person about unrelated matters without reasonable suspicion. In *State v. Toevs*, 327 Or 525, 529, 964 P2d 1007 (1998), for example, the officer continued to question the defendant about possible possession of illegal drugs after informing him that he was free to go. Because the continued questioning amounted to further detention not reasonably related to the traffic infraction and not independently justified, the Supreme Court required that the evidence be suppressed. *Id.* at 532. "*Toevs* thus stands for the proposition that questioning that has the effect of detaining a defendant *beyond* a completed traffic stop must be supported by reasonable suspicion that the defendant is engaged in criminal activity." *Amaya*, 176 Or App at 43-44 (emphasis in original).

The second way in which an officer can unlawfully question a person after a lawful traffic stop occurs when the officer, without letting the person know expressly or by implication that he or she is free to leave, detains the person beyond the time reasonably required to investigate the traffic infraction and issue a citation. *State v. Ehret*, 184 Or App 1,

55 P3d 512 (2002), is illustrative. In that case, we held that an officer unlawfully extended the traffic stop when, having completed the defendant's citations for speeding and driving without insurance, he delayed in giving those citations; instead of doing so, and, without reasonable suspicion that the defendant had engaged in criminal activity, he questioned the defendant about his criminal history and whether there were drugs inside the vehicle. *Id.* at 3-5, 10.

In contrast, in *Boatman*, we held that an officer's request for consent to search did not unlawfully extend the traffic stop when that request occurred within the reasonable time required to issue a citation and complete the necessary documentation, as well as before the officers had completed those tasks. 185 Or App at 34. We came to a similar conclusion in *Raney*, where we held that an officer's questioning and subsequent request for consent to search did not unlawfully extend the traffic stop when the officer had not yet ascertained the status of defendant's driver's license and there was no evidence of deliberate delay. 215 Or App at 345.

The foregoing authorities stand for the proposition that, although an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check, that officer is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go, the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity.

The facts in this case present the second factual scenario. The issue is whether Van Arsdall detained defendant beyond the time reasonably required to complete the traffic stop. Because Van Arsdall had all the information necessary to issue a citation when he recontacted defendant after obtaining the results of the records check, we conclude that he was obligated to either (1) ask additional questions related to the initial traffic infraction, (2) issue a citation, or (3) end

the stop at that point. When he chose instead to engage defendant in conversation unrelated to the burned-out license plate light, he extended the duration of the stop beyond the time reasonably required to investigate and cite defendant for the traffic infraction.

The state urges us to adopt a rule that would measure the reasonable duration of a traffic stop during which an officer chooses not to issue a citation by the time it would have taken to process a citation if the officer had chosen to do so. Such a rule, however, would in too many situations invite speculation and, for that reason, prove unworkable.

Thus, to be lawful, Van Arsdall's comments must have been supported by reasonable suspicion of further criminal activity. Reasonable suspicion requires that an officer subjectively believe that a person has committed a crime and that the belief be objectively reasonable in light of the totality of the circumstances. ORS 131.605(5); *Ehret*, 184 Or App at 7. The state concedes that, as the trial court ruled, Van Arsdall's initial observations of the two containers and the sores on defendant's face were insufficient to establish an objectively reasonable suspicion that defendant was involved in the manufacture of methamphetamine. The state instead argues that, after Van Arsdall returned to defendant's car and began to question him about drug-related activity, defendant mentioned that he worked for a fertilizer manufacturing company. "Van Arsdall became more suspicious of defendant's items at that point, because Van Arsdall knew fertilizer was 'constantly' stolen from farms and businesses for its anhydrous ammonia, which was another ingredient used to manufacture methamphetamine." However, that item of information was obtained *during* what we have concluded was the unlawfully extended part of the stop; it therefore cannot be used to justify the unlawful extension. In sum, Van Arsdall's extension of the stop constituted an unlawful seizure in violation of Article I, section 9.

We now turn to defendant's contention that his consent to the search was a product of the unlawful seizure and that all evidence discovered as a result must be suppressed. In *Hall*, the Supreme Court held that "evidence [obtained] from a search following an otherwise valid consent is subject

to suppression under the Oregon exclusionary rule if the defendant's consent is the product of preceding unlawful police conduct." 339 Or at 36. The court explained that, after the defendant has established a minimum factual nexus—that is, the existence of a "but for" relationship between the disputed evidence and the prior unlawful police conduct—the state has the burden to demonstrate that "the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 25, 34-35. Accordingly, the court held that the state had not met its burden in that case, given the close temporal proximity between the illegal detention and the defendant's consent to search, and the absence of any intervening or mitigating circumstances. *Id.* at 36. The disputed evidence was thus subject to suppression.

Defendant in this case has shown the requisite "but for" connection: Van Arsdall asked for defendant's consent during the unlawful extension of the traffic stop; thus, but for the unlawful seizure, he would not have been in a position to request consent. Because the unlawful seizure and defendant's consent occurred contemporaneously, and because no intervening circumstances or mitigating factors exist, we agree with defendant that his consent derived from Van Arsdall's unlawful seizure and that the evidence should therefore have been suppressed.

In sum, Van Arsdall extended the traffic stop beyond a reasonable time when he engaged defendant in unrelated conversation about the containers instead of issuing a citation. Because the officer lacked reasonable suspicion to extend the stop, defendant's consent was the product of an unlawful seizure under Article I, section 9, of the Oregon Constitution, and the evidence discovered as a result of that consent should have been suppressed. Accordingly, the trial court erred in denying defendant's motion.

Reversed and remanded.