Submitted March 31, reversed and remanded July 2, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PAUL KENNETH SHIRLEY,
aka Paul K. Shirley,
*Defendant-Appellant.*

Multnomah County Circuit Court
051237398; A132681

188 P3d 410

Peter Gartlan, Chief Defender, Legal Services Division, and Bronson D. James, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Riggs, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals a conviction for possession of a controlled substance, ORS 475.840(3).[1] On appeal, he makes two assignments of error. In his first assignment of error, he asserts that the trial court erred in denying his motion to suppress statements he made after being stopped by a Portland police officer. In his second assignment of error, he asserts that the trial court erred in admitting a laboratory report showing that the substance he possessed was cocaine. With regard to the second assignment of error, the state concedes that error apparent on the face of the record exists under *State v. Marroquin*, 215 Or App 330, 168 P3d 1246 (2007), and that the case should be remanded for a new trial. We accept the state's concession and, for the reasons expressed in *Marroquin*, exercise our discretion to correct the error. However, because the issue of whether the trial court erred in denying his motion to suppress is likely to arise on remand, the state requests that we consider the first assignment. Because a reversal of the trial court's order denying the motion to suppress could affect the outcome on remand, we accede to the state's request, and we conclude that the trial court erred in denying defendant's motion.

In late December 2005, around 4:20 p.m., City of Portland Police Officer Hendrie was conducting a "plain clothes mission" near the Portland bus mall, for the purpose of "spotting drug transactions between dealers and smokers of crack cocaine." He saw what he believed was a drug transaction occur between another person and defendant, during which defendant purchased controlled substances. Hendrie approached defendant, who was walking away from him, and showed defendant his badge, identifying himself as a police officer. Hendrie was not wearing a uniform, and he did not have his weapon drawn. When Hendrie identified himself as a police officer, he saw defendant swallow "very hard." Based on his training and experience, Hendrie believed that defendant was trying to dispose of the controlled substance that he had just purchased. Hendrie told defendant to "spit it out."

---

[1] Although defendant refers to ORS 475.992 as the statute defining possession of a controlled substance, that statute was renumbered in 2005.

Defendant said, "I don't have anything," and Hendrie replied, "I watched you just purchase drugs. Spit it out." Defendant then opened his mouth, displaying a piece of hard candy. Hendrie told defendant that he still believed that he had swallowed the drugs.

At that point, Officer Simon arrived on the scene, and Hendrie informed Simon that defendant was denying that he had just purchased a controlled substance. Hendrie then observed a rock of crack cocaine packaged in plastic on the sidewalk "almost directly beneath where [defendant's] right side would be." Hendrie picked up the cocaine, handed it to Simon, and told defendant, "Well, it doesn't matter. We found your drugs." Hendrie then told defendant that it was "not a big deal," that he did not need to start lying, and that "it's disrespectful for him to lie." Defendant responded, "Okay, yeah, I bought it for $10."

Defendant was not handcuffed or physically restrained by the officers at the time that he made the statement that he had purchased the cocaine for $10. Hendrie told the other officer to leave because defendant "was being cooperative." Defendant was then issued a citation and permitted to leave the scene. Hendrie characterized the interaction with defendant as "low-key[,]" and the entire contact lasted "approximately a minute."

Pretrial, defendant moved to exclude from evidence the statement that he had bought the drugs for $10, contending that it was the product of compelling circumstances tantamount to custodial interrogation and that it had been made without him being advised of his *Miranda* rights. Following a hearing at which the evidence related above was elicited, the trial court denied the motion to suppress, and defendant was convicted, following a stipulated facts trial.

■ ■ On appeal, defendant argues that his statement should have been suppressed because it was obtained in violation of his right against self-incrimination guaranteed by Article I, section 12, of the Oregon Constitution.[2] Under Article I, section 12, a police officer is required to give *Miranda*-like warnings when a person is in custody or when the person

---

[2] On appeal, defendant makes no argument under the United States Constitution.

is in "compelling circumstances." *State v. Roble-Baker*, 340 Or 631, 638, 136 P3d 22 (2006). Defendant does not argue that he was in custody at the time he made the challenged statement; accordingly, the issue is whether "compelling circumstances" existed that required the officer to give *Miranda* warnings.

■■ As the Supreme Court explained in *Roble-Baker*, "in determining whether the police placed a defendant in compelling circumstances, this court will consider all the circumstances, and its overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Id.* at 641. The court went on to explain that, in making that determination, a nonexclusive "host of factors" should be considered, including (1) the location of the encounter; (2) the length of the encounter; (3) the amount of pressure exerted on the defendant; and (4) the defendant's ability to terminate the encounter. *Id.* at 640-41.

This court also has considered a number of factors in determining whether the circumstances of an encounter were "compelling" for purposes of Article I, section 12, including the number of officers present, whether the suspect was physically restrained with handcuffs or confined in a patrol car, whether officers used force or displayed weapons, the duration of the detention, the demeanor of the officers in engaging and questioning a suspect, the language used by the officers, whether sirens or flashing lights were present, and whether the suspect had been expressly confronted with incriminating evidence at the time of the questioning.[3]

■■ None of the above factors is to be applied "mechanically." *Roble-Baker*, 340 Or at 641. Rather, the *Miranda* warnings are necessary to ensure that a person's statement is truly the product of free choice and not involuntary or the product of his will being overborne. *See, e.g., State v. Magee*, 304 Or 261, 263, 744 P2d 250 (1987) (the defendant was told

---

[3] *See, e.g., State v. Burdick*, 186 Or App 460, 63 P3d 1190 (2003); *State v. McMillan*, 184 Or App 63, 68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003); *State v. Werowinski*, 179 Or App 522, 40 P3d 545, *rev den*, 334 Or 632 (2002); *State v. Barber*, 179 Or App 674, 41 P3d 455, *rev den*, 334 Or 632 (2002); and *State v. Nevel*, 126 Or App 270, 868 P2d 1338 (1994).

by an officer investigating assault charges that he could not leave the police station because the officer believed that he was involved in the fight that had occurred). Ultimately, the test is whether the totality of the circumstances is sufficiently compelling to require the warnings. *State v. Stevens*, 311 Or 119, 135-36, 806 P2d 92 (1991).

Here, it is evident from the facts that Hendrie manifested his authority as a police officer and commanded defendant to undertake a physical action (spit out what was in his mouth), and that a reasonable person in defendant's circumstances would not have felt free to leave. In other words, defendant's liberty of movement was under police restraint at the time that he made the incriminating statement. Significantly, however, those actions by the police did not directly induce defendant to make the statement, "Okay yeah, I bought it for $10." Rather, defendant protested and demonstrated his claim of innocence in response to the officer's command to "[s]pit it out." At that point in time, it is clear that defendant's will had not been overborne.

After the officer observed the cocaine lying on the ground next to defendant, however, the tenor of the confrontation changed. Before the discovery of the cocaine, the officer may have only suspected that defendant was in possession of a controlled substance, but his discovery of the cocaine would have indicated to a reasonable person in defendant's circumstances that the officer was not going to let him leave without further police action. In other words, at that point in time, defendant would have reasonably believed that he was going to be placed in custody. What followed thereafter was an effort by the officer to extract an incriminating statement from defendant. He told defendant that "it was not a big deal" and that defendant should not lie to him because it was "disrespectful." Those statements constituted a form of interrogation regarding whether defendant had possessed the cocaine, and prompted defendant's admission without the benefit of a *Miranda* warning.

We conclude that, when all the circumstances are considered together, they created a compelling situation under Article I, section 12, because defendant could have reasonably understood that Hendrie was exerting control

over defendant's means of communication and movement, that the police had probable cause to arrest him, and that Hendrie would be deciding whether defendant should be arrested and taken to jail. *See, e.g., State v. McMillan*, 184 Or App 63, 68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003) (holding that similar considerations compelled the giving of *Miranda* warnings). When Hendrie discovered the cocaine on the ground next to defendant, it was incumbent on him to advise defendant of his rights under *Miranda* before proceeding to induce defendant to "not lie" about the circumstances that existed.

Accordingly, we reverse the trial court's order denying defendant's motion to suppress and remand for a new trial.

Reversed and remanded.