Submitted February 27, reversed and remanded September 3, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LAWRENCE DAVID HENDON,
*Defendant-Appellant.*

Multnomah County Circuit Court
051036355; A131591

194 P3d 149

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and David Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Schuman, Judge, and Deits, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals a judgment of conviction for possession of a controlled substance, *former* ORS 475.992 (2005), *renumbered as* ORS 475.840 (2007), raising two assignments of error. First, defendant contends that the trial court erred by admitting evidence, namely a plastic bag containing a "clear crystal," obtained after an unlawfully extended stop. Second, defendant contends that the trial court erred in admitting a laboratory report identifying the substance in the plastic bag as methamphetamine without requiring the state either to call the criminalist who prepared the report or to demonstrate that the criminalist was unavailable. We reverse on the second assignment of error but also address the first because the issue it raises is likely to arise again on remand.

The following facts are supported by evidence in the record. *See, e.g., State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993); *State v. Silva*, 170 Or App 440, 442, 13 P3d 143 (2000) (factual findings consistent with trial court's ultimate conclusion are binding on appellate court if there is constitutionally sufficient evidence in the record to support them). Officer Filbert was in his patrol car when he observed defendant get out of a vehicle and cross two barriers (a fence and a chain) and then train tracks at a MAX station in north Portland in violation of posted signs. Filbert called and motioned to defendant to stop, which defendant did. At that time, Filbert believed that he had observed defendant commit the crime of trespass.

Defendant stopped on the sidewalk and waited while Filbert walked to join him. Filbert asked defendant his name and if he had any "dope." Defendant provided his name and stated that he had no warrants. As to the question about drugs, defendant responded, "No, you can check if you want." Filbert ran a radio records check on defendant, which came back clear.[1] Filbert then asked defendant if he could search

---

[1] There is no direct testimony indicating that defendant gave Filbert his identification. However, we infer that Filbert obtained defendant's identification before running the records check, based on Filbert's testimony that "I went * * * [to] my car and checked him via my computer and double-checked his ID with his mug * * *."

him, and defendant said, "Okay." In defendant's front pocket, Filbert found a plastic bag containing a clear crystal. Filbert asked defendant if that was his "meth," and defendant responded, "[O]h damn, I forgot about that." Filbert cited defendant for possession of a controlled substance, but not for trespass.

Because it is dispositive, we first address defendant's second assignment of error, in which he contends that the trial court erred in admitting the lab report identifying the substance seized from him as methamphetamine. Before trial, defendant notified the state that he requested the presence of the criminalist who prepared the report. The state did not procure the attendance of the criminalist, and defendant moved *in limine* to exclude the report. Defendant raised a number of arguments in support of his motion, including that admitting the report without the presence or unavailability of the criminalist violated his right to confrontation under the Sixth Amendment to the United States Constitution. The trial court denied defendant's motion and convicted him after a trial on stipulated facts.

On appeal, defendant argues that the trial court erred in admitting the report without requiring the state to call the criminalist or establish that the criminalist was unavailable. He contends, relying primarily on *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), that the report is testimonial evidence and, accordingly, the Sixth Amendment guarantees him the opportunity to cross-examine its author unless the state establishes that the author is unavailable. He further argues that Article I, section 11, of the Oregon Constitution should be interpreted to provide the same guarantee.

The state responds by conceding error, albeit in a somewhat limited way. The state contends that the trial court did not err under *State v. Birchfield*, 342 Or 624, 631-32, 157 P3d 216 (2007), which was decided after defendant submitted his brief in this case and in which the Supreme Court held that Article I, section 11, is violated where a lab report identifying drugs is admitted after a defendant notifies the state that it should produce the criminalist, but the state does not subpoena the criminalist or establish that the

criminalist is unavailable. Instead, the state contends that the trial court erred under *State v. Hancock*, 317 Or 5, 854 P2d 926 (1993), in which, according to the state, the Supreme Court construed ORS 475.235 "as a notice requirement and which defendant adequately complied with here."

■ We initially address preservation. Although the state does not argue directly that defendant did not preserve below a similar challenge under Article I, section 11, preservation concerns may underlie the limited nature of the state's concession of error. And, in any event, we must examine preservation even if it is not raised. *State v. Wyatt*, 331 Or 335, 345-47, 15 P3d 22 (2000). The confrontation arguments before the trial court focused almost exclusively on the Sixth Amendment; however, there was one reference by the state to *Hancock* in response to defendant's objection to admission of a similar report under both the state and federal constitutions.

■ Assuming without deciding that the state's single reference to *Hancock* was not sufficient to preserve defendant's claim that the trial court erred in failing to suppress the report under Article I, section 11, we nevertheless will address and correct the error under the state constitution. As we explained in similar circumstances in *State v. Marroquin*, 215 Or App 330, 335-38, 168 P3d 1246 (2007), the error under Article I, section 11, is plain in light of *Birchfield* and, for the reasons expressed in *Marroquin*, we exercise our discretion to correct it. Because the report was the sole evidence that the substance in defendant's pocket was methamphetamine, admitting the report was not harmless and, accordingly, we reverse. *See* OEC 103(1) (evidentiary error not presumptively prejudicial); *cf. State v. Willis*, 219 Or App 268, 275, 182 P3d 891 (2008) (error under Article I, section 11, in admitting lab report was harmless where experienced police officer identified exhibit as marijuana).

As noted, however, we also address defendant's other assignment of error because the issue it raises is likely to arise on remand. In that assignment of error, defendant challenges the denial of his motion to suppress the plastic bag found in his pocket, made on the ground that his consent to search was the product of an unlawful extended stop. *See*

*State v. Shirley*, 221 Or App 12, 14, 188 P3d 410 (2008) (similarly addressing issue that was likely to arise on remand). Defendant does not contend that his consent to search was involuntary. Moreover, defendant concedes that he was initially lawfully stopped for trespass. Nevertheless, relying on both the state and federal constitutions, defendant argues that Filbert unlawfully expanded the subject matter of the stop and prolonged its duration and, further, that Filbert exploited that illegality to obtain defendant's consent to search. The state argues that Filbert did not unlawfully expand or prolong the stop. Even if he did, the state alternatively contends, Filbert did not exploit that illegality to obtain defendant's consent to search.

■■ The state has the burden of establishing the validity of a warrantless search or seizure. *State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000); *State v. Rudder*, 219 Or App 430, 435, 183 P3d 212 (2008). Although voluntary consent is generally a valid exception to the warrant requirement, if police obtain consent to search by exploiting a prior violation of a defendant's Article I, section 9, rights, evidence revealed as a result of that search will be suppressed. *State v. Hall*, 339 Or 7, 21, 115 P3d 908 (2005).

■■ We first address defendant's argument that Filbert unlawfully expanded the scope of the stop by asking defendant about drugs. As discussed, defendant concedes that he was initially lawfully stopped for trespass. As we held in *State v. Amaya*, 176 Or App 35, 44, 29 P3d 1177 (2001), *aff'd*, 336 Or 616, 89 P3d 1163 (2004), questioning during a lawful stop on a matter unrelated to the basis for that stop does not require independent reasonable suspicion concerning the unrelated matter. *See also State v. Duffy*, 176 Or App 49, 53, 29 P3d 1222 (2001), *rev den*, 337 Or 669 (2004) (following *Amaya*); *State v. Williams*, 206 Or App 432, 434-35 n 2, 136 P3d 1201 (2006) (declining to revisit *Amaya*). Defendant suggests that *Amaya*'s holding is limited to traffic stops. We reject that suggestion. Nothing in *Amaya* indicates that the type of stop is important, as long as the stop was lawful. Defendant also argues that we should revisit the holding in *Amaya*; in his view, the fact that the Supreme Court affirmed in that case on another ground undermines the continuing validity of the ground that we relied on. The implication that

defendant draws is unjustified. Because the Supreme Court did not address our reasoning in *Amaya*, our holding remains good law, and we decline defendant's invitation to reconsider it.

█ Defendant alternatively contends that Filbert unlawfully prolonged the duration of the stop. Defendant argues that this case resembles *State v. Ehret*, 184 Or App 1, 10, 55 P3d 512 (2002), in which we concluded that an officer had unlawfully prolonged a stop by detaining the defendant after writing the citations related to the initial basis for the stop without reasonable suspicion of unrelated crimes. The state argues that any additional time expended in this stop does not rise to the level of unlawful prolongation.

██ Determining whether a traffic stop was unlawfully extended is a fact-specific inquiry. *See, e.g., State v. Raney*, 215 Or App 339, 343, 168 P3d 803 (2007), *modified on other grounds on recons*, 217 Or App 470, 175 P3d 1024, *rev den*, 344 Or 671 (2008). As we explained in *State v. Rodgers*, 219 Or App 366, 182 P3d 209 (2008), which was decided after this case was briefed and submitted, questioning unrelated to the initial basis for a stop can lead to unlawful prolongation of the stop in two kinds of factual situations. In the first kind of situation, an officer concludes a lawful stop (for example, by telling a person that he or she is free to go) and then initiates a second stop by questioning the person about unrelated matters without reasonable suspicion. *Id.* at 371. There is no evidence in this case, and defendant does not appear to argue, that the initial stop had been concluded before Filbert confirmed defendant's consent to search.

█ Rather, defendant argues, in effect, that this case fits within the second kind of situation identified in *Rodgers*. In that kind of situation, an officer, without letting the person know expressly or by implication that he or she is free to go, detains the person beyond the time reasonably required to investigate the initial basis for the stop and issue a citation. *Id.* at 371-72. As we observed in *Rodgers*, that was the situation in *Ehret*, and similarly, according to defendant, that is the situation in this case.

In *Ehret*, the defendant was lawfully stopped for speeding. The police officer obtained the defendant's driver's

license and learned that the defendant's automobile insurance policy had expired. The officer returned to his patrol car to radio for records check and to write out citations. One of the records checks revealed that the defendant had had previous involvement with the police involving controlled substances. The officer finished writing out the citations and then returned to the defendant's car. Instead of delivering the citations, the officer began questioning the defendant about drugs and eventually sought the defendant's consent to search his person and his vehicle. The defendant ultimately agreed, leading to the discovery of drugs and a large amount of cash and, ultimately, the defendant's conviction for delivery of a controlled substance. 184 Or App at 3-6. We concluded that, because the officer had completed the citations for speeding and driving without insurance, he had unlawfully prolonged the duration of the stop by delaying delivering the citations and by questioning the defendant about drugs without reasonable suspicion of drug-related behavior. *Id.* at 9-10.

In *Rodgers*, the defendant was lawfully stopped for driving a vehicle with a burned-out license plate light. After obtaining the defendant's license and registration, the police officer ran a records check, which came back clear. At that point, according to the officer's testimony, he had everything he needed to issue a citation. Instead of doing so, however, the officer began to question the defendant about items in his vehicle, which the officer believed indicated that the defendant was involved in the manufacture of methamphetamine. After an exchange of, according to the officer's testimony, "[a] couple of minutes," the officer asked for and received the defendant's permission to search the vehicle. 219 Or App at 369. The results of that search led to the defendant's conviction for manufacture of a controlled substance.

The state argued that the reasonableness of the duration of the traffic stop should be measured by the time that it would have taken to process the initial citation, had the officer not engaged in additional, unrelated questioning. *Id.* at 373. We rejected that argument, explaining that

"although an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting

the results of a records check, that officer is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. *When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go,* the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity."

*Id.* at 372 (emphasis added). Because the officer testified that, after completing the records check, he had all the information that he needed to issue a citation, he unlawfully prolonged the duration of the stop when he began to question the defendant about unrelated matters. *Id.* at 372-73.

More recently, we applied the analysis in *Rodgers* to a case similar to the one at hand. In *State v. Kirkeby*, 220 Or App 177, 185 P3d 510 (2008), a police officer lawfully stopped the defendant because he knew that the defendant had a suspended license. The defendant got out of his vehicle and handed the officer an Oregon driver's license. We noted that, "[a]t that point in the encounter, [the officer] had defendant's name, date of birth, and driver license number. [The officer] acknowledged that that was all the information that would be contained on a traffic citation[.]" *Id.* at 180. Nonetheless, the officer did not issue a citation at that time. Instead, he asked the defendant if he had weapons on his person or in the vehicle. The defendant said that he did not, and the officer then asked the defendant for permission to conduct a patdown search for weapons. During the search, the officer discovered evidence that led to a charge of possession of a controlled substance. *Id.* at 180-81. Relying on *Rodgers*, we concluded that the trial court correctly suppressed the evidence derived from the search because it was obtained during an unlawfully extended stop. *Id.* at 186-87. We explained:

"At the point at which [the officer] asked defendant for permission to search him, [the officer] testified that, although he had defendant's name, date of birth, and driver license number, he 'probably' did not have everything he needed to issue defendant a citation because he did not have defendant's proof of insurance and vehicle registration information. *However, even if that information was essential for the*

*issuance of a traffic citation, there is nothing in the record to indicate that [the officer] asked defendant for those items or was waiting for defendant to retrieve them, nor that he was engaged in any other steps related to the investigation of the traffic offense.* Thus, the request for consent to search defendant did not occur 'during an unavoidable lull in the investigation.' *Rodgers*, 219 Or App at 372."

*Kirkeby*, 220 Or App at 186 (emphasis added).

As noted, the state bears the burden of rebutting the presumption against warrantless searches. Here, as in *Kirkeby*, the state elicited no testimony from Filbert about what steps must be taken or what information is required to issue a citation for trespass, whether he had followed all those steps or obtained all that information, or that he was engaged in taking steps necessary to complete the investigation of the stop for trespass when he returned from his patrol car and asked defendant if he would consent to a search. In other words, there is no evidence in this case that the request to search occurred during an "unavoidable lull" in the investigation for trespass. In consequence, the state has not established that Filbert did not detain defendant beyond the time reasonably necessary to investigate the initial lawful basis for the stop, and we must conclude that Filbert unlawfully prolonged the duration of the stop when he asked defendant to consent to a search without reasonable suspicion of other criminal activity.

■ However, the fact that a consent search occurred after illegal police conduct does not necessarily make the search invalid; mere temporal proximity does not in itself establish that the police exploited the illegality in order to obtain consent. *State v. Vondehn*, 219 Or App 492, 499, 184 P3d 567 (2008). As the Supreme Court explained in *Hall*, once a defendant establishes a "minimal factual nexus"—or "but for" relationship—between disputed evidence and prior unlawful police conduct, the state may establish that the disputed evidence is admissible under Article I, section 9, by proving that the evidence did not derive from the prior illegality. 339 Or at 25.

■ To support admissibility, the state must show one of the following: (1) the police inevitably would have obtained

the evidence through lawful means; (2) the police obtained the evidence independently of the violation of the defendant's Article I, section 9, rights; or (3) the violation of the defendant's Article I, section 9, rights had such a tenuous factual link to the evidence that the unlawful police conduct cannot be properly viewed as the source of the evidence. *Id.* As the Supreme Court explained in *Hall*:

> "In each of those * * * circumstances, the admission of the challenged evidence does not offend Article I, section 9, because the defendant has not been disadvantaged as a result of the unlawful police conduct or, stated differently, because the defendant is not placed in a worse position than if the governmental officers had acted within the bounds of the law."

*Id.*

■■ ■■ Here, defendant has met the low threshold of "but-for" causation: Filbert asked for and received defendant's consent to search after unlawfully prolonging the stop; had he not searched defendant during an illegal prolongation of the stop, Filbert would not have discovered the plastic bag in defendant's pocket. However, we conclude that the state has proved that the discovery of the evidence did not derive from the preceding illegality because the state made the second showing identified in *Hall*: the search resulted from defendant's lawful consent, independently of subsequent unlawful police conduct.

As defendant concedes, he was initially lawfully stopped for trespass. As noted, Filbert's initial question about drugs at the outset of that lawful stop was lawful. In response to Filbert's initial lawful question about drugs, defendant spontaneously offered to allow Filbert to search him. Filbert did not follow up on that offer right away; instead, he first ran a records check on defendant. After he received the results of the records check, Filbert confirmed defendant's previously expressed consent to search and searched defendant. Had Filbert searched defendant immediately after defendant spontaneously offered to be searched and before running the records check, there would have been no violation of defendant's Article I, section 9, rights. Instead, Filbert ran the

records check first and then searched defendant. In those circumstances, defendant was in no worse a position because Filbert followed up on defendant's spontaneous offer to be searched after running the records check instead of before; Filbert would have discovered the drugs regardless of the timing of the search. *See Hall*, 339 Or at 25. Defendant was not disadvantaged in any way because Filbert confirmed the consent that defendant previously had volunteered and searched him after running the records check rather than before. Because the state has established that the discovery of the plastic bag resulted from defendant's lawful consent, the trial court correctly denied defendant's motion to suppress the plastic bag under Article I, section 9.

We turn to defendant's argument that the plastic bag should have been suppressed under the Fourth Amendment to the United States Constitution. Defendant did not raise before the trial court separate arguments under the federal constitution, nor does he present a "thorough and focused" federal constitutional analysis on appeal. *See State v. Thompson*, 328 Or 248, 254 n 3, 971 P2d 879, *cert den*, 527 US 1042 (1999) (rejecting federal constitutional argument that had not been developed in the trial court or on appeal). Accordingly, we reject his federal constitutional argument without further discussion.

In summary, the trial court did not err in admitting the plastic bag that Filbert found in defendant's pocket. The trial court erred, however, in admitting the lab report that identified the substance in that plastic bag as methamphetamine without requiring the state either to call the criminalist who prepared the report or to demonstrate that the criminalist was unavailable.

Reversed and remanded.