Argued and submitted May 27, reversed and remanded December 23, 2009,
petition for review dismissed March 9, 2010 (348 Or 71)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LAURA JEAN BERRY,
*Defendant-Appellant.*

Josephine County Circuit Court
06CR0317; A135730

222 P3d 758

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was convicted of unlawful possession of methamphetamine. ORS 475.894. On appeal, she assigns error to the trial court's denial of her motion to suppress evidence that, she argues, derived from a violation of her rights under Article I, section 9, of the Oregon Constitution.[1] Specifically, she argues that, when the police officer who had stopped her for a traffic violation asked for her consent to search her person and her vehicle, the officer unlawfully extended the duration of the traffic stop without reasonable suspicion of criminal activity. We agree. We therefore reverse and remand.

The following facts are undisputed. Around 2:30 a.m., Officer Lidey saw defendant turn into the parking lot of the Grants Pass railroad depot, a building that also housed a restaurant. The restaurant was closed at the time. Because defendant failed to signal 100 feet before turning, Lidey activated his overhead lights and followed her into the lot. As he approached her car, he saw her make what he described as "furtive movements" toward the center console; defendant testified that she had been looking for her license and registration, and Lidey acknowledged that she might have already had those documents in hand when he reached her car. Lidey also testified that defendant had appeared nervous, but that she had not appeared to be under the influence of drugs or alcohol.

Lidey explained to defendant that he had stopped her for failing to signal. He then asked for her license and registration, which she provided. He could not remember whether he called in defendant's information, but he testified that it would have been his normal protocol to do so. The record contains no evidence concerning when (if ever) Lidey heard back from the records check or when (if ever) he had the information he needed to issue the traffic citation.

During her conversation with Lidey, defendant told him that she had come from a nearby restaurant and that she

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

had pulled into the parking lot because she had promised a friend that she would pick up a banner there. Lidey testified that the restaurant from which defendant had come "has a higher frequency of illegal drug activity." Lidey became suspicious that "unfortunately [defendant] was possibly engaged in maybe some type of illegal activity." He told defendant about his suspicions and explained their bases: "the time of the morning, where she said she was coming from, her nervousness, also the fact that we were pulling in a place where she was going to pick something up that was closed * * * and also the furtive movements upon my approach." Lidey asked defendant if she had anything illegal with her; she told him that she did not. He then asked if he could search her and the car, and she gave him her consent. During the search, he noticed a small bag with a white crystalline substance in defendant's purse, which Lidey correctly believed to be methamphetamine. He then arrested defendant.

Defendant was charged with possession of methamphetamine. Before trial, she moved to suppress the evidence obtained as a result of the consent search. Although she conceded that the initial traffic stop was lawful, she argued that the evidence found was the product of an unlawful extension of that stop in violation of her rights under Article I, section 9, of the Oregon Constitution. The trial court denied the motion, finding that the consent occurred while Lidey "was in the process of conducting the traffic stop and before a citation was written" and concluding that the questioning about matters beyond the traffic stop and the request for consent to search "did not excessively detain" defendant. Defendant entered a conditional guilty plea, reserving the right to appeal the trial court's denial of her motion to suppress. Defendant was convicted, and this appeal followed.

During a traffic stop, a police officer may question the driver about criminal activity that is unrelated to the stop, even if the officer does not have any suspicion of such activity, without violating Article I, section 9. *State v. Amaya*, 176 Or App 35, 47, 29 P3d 1177 (2001), *aff'd on other grounds*, 336 Or 616, 89 P3d 1163 (2004). However, an officer cannot expand that authority by detaining the person longer than is necessary to process the traffic stop unless the officer has reasonable suspicion of further criminal activity.

"[A]lthough an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check, that officer is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go, the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity."

*State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008), *aff'd*, 347 Or 610, ____ P3d ____ (2010).

According to the state, "Lidey questioned defendant about illegal possessions while he was waiting for a response to his request for a warrants check, the prototypical 'unavoidable lull' this court discussed in *Rodgers*." In support of that point, the state notes, first, that the trial court found as fact that the questioning occurred during the stop, and, second, that "[d]efendant does not provide a citation to the record to support her assertion that Officer Lidey had obtained any information from his radio request for a warrants check."

■■　　The record supports the trial court's finding that the questioning occurred during the stop, that is, after Lidey had restrained defendant's liberty and before he had informed her that she was free to leave (which, in fact, he never did). We are therefore bound by that finding. That finding, however, does not address the key question: whether, when Lidey began questioning defendant about matters unrelated to the traffic violation, he had received all of the information that he needed in order to proceed with citing her but decided instead to ask unrelated questions and seek consent to search. According to the state, we must infer that he was still waiting for that information, because defendant failed to prove otherwise.

■　　However, the state, not defendant, has the burden of proving that the questioning occurred during an unavoidable lull in the investigation of the traffic infraction. *State v. Hendon*, 222 Or App 97, 102, 194 P3d 149 (2008). In *Hendon*,

the defendant was lawfully stopped for trespassing. The officer asked him his name and whether he had any drugs on him. The defendant gave his name, and the officer ran a records check on the defendant, which came back clear. The officer then asked if he could search the defendant, the defendant consented, and the officer found drugs. *Id.* at 99. At trial, the state elicited no testimony that the request to search had occurred during an unavoidable lull. *Id.* at 106. Therefore, we concluded:

> "[T]he state has not established that [the officer] did not detain [the] defendant beyond the time reasonably necessary to investigate the initial lawful basis for the stop, and we must conclude that [the officer] unlawfully prolonged the duration of the stop when he asked [the] defendant to consent to a search without reasonable suspicion of other criminal activity."

*Id.*

This case is similar. The state put on no evidence that, when Lidey began to question defendant about matters unrelated to the traffic stop, he had not yet received all of the information that he needed to process the traffic citation. Because the state bears the burden of proof and did not meet that burden, we must conclude that Lidey unlawfully extended the duration of the stop when he asked for defendant's consent to search.

Thus, the questioning and the request for consent to search were unlawful unless Lidey had reasonable suspicion of further criminal activity. In evaluating the objective reasonableness of an officer's belief that a crime has been committed, we examine the totality of the facts and circumstances, including the officer's training and experience. *State v. Williams*, 178 Or App 52, 62, 35 P3d 1088 (2001). To be reasonable, however, suspicion must be based on specific and articulable facts. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). Here, according to Lidey, the facts consisted of defendant's "furtive" movements, her pulling into the parking lot of a building housing a closed restaurant for a reason that Lidey found to be improbable, her initial nervousness, and her recent presence at a restaurant that Lidey knew was associated with drug activity.

We have repeatedly held that "furtive movements" do not by themselves justify reasonable suspicion, although they may be a factor to consider along with others. *E.g.*, *State v. Jacobs*, 187 Or App 330, 335, 67 P3d 408 (2003). We have also held, in circumstances far more suspicious than these, that one's presence at a place where drugs are used does not suffice to establish reasonable suspicion, even when accompanied by a transparently false account. In *State v. Broughton*, 221 Or App 580, 193 P3d 978 (2008), an officer saw the defendant enter a known drug house and leave a minute later. When the officer asked the defendant why her visit had been so short, she replied that she was returning some clothing to the occupants—a statement that the officer knew to be false, having seen her enter the house empty handed. *Id.* at 583-84. We held that the officer's suspicions were not reasonable. Further, there is nothing inherently suspicious about driving at 2:30 a.m. or being nervous when pulled over by a police officer, particularly at that hour. Nonetheless, the state argues that, in this case, the totality of the circumstances is larger than the sum of its parts, and that argument is not without some force. In the final analysis, however, we are not persuaded.

Here, the only evidence supporting reasonable suspicion were the officer's observations of what appeared to be furtive movements by defendant and the improbability of her reason for pulling into the closed depot/restaurant (which she explained as her attempt to pick up an object that a friend had left for her outside the building). Those facts are not sufficient to establish reasonable suspicion. In light of these considerations and our precedent, we conclude that, when he began to question defendant about criminal activity, the officer did not have reasonable suspicion. The court therefore should have granted defendant's motion to suppress.

Reversed and remanded.